**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TYSON R.,[1] | : | Case No. 2:25-cv-00810 |
| Plaintiff, | : | District Judge Algenon L. Marbley<br>Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION[2]

Plaintiff filed an application for Disability Insurance Benefits in November 2022. His claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff then filed this action.

Plaintiff seeks an order that remands this matter to the Commissioner for an award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm its decision. For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

## I. BACKGROUND

Plaintiff asserts that he has been under a disability since December 16, 2021. At that time, he was forty-six years old and was considered a "younger person" during the period at issue.[3] 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 5) is summarized in the ALJ's decision ("Decision," Doc. No. 5 at PageID 31-50), Plaintiff's Statement of Errors ("SE," Doc. No. 8), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 10). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[3] The period at issue began on December 16, 2021, the alleged onset date of disability, and ended on December 31, 2022, the date Plaintiff last met the insured status requirements of the Social Security Act. (AR, Doc. No. 5 at PageID 210.)

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff did not engage in substantial gainful activity during the period at issue from the alleged onset date of December 16, 2021 through the date last insured of December 31, 2022.

Step 2: He had the severe impairments of plantar fasciitis with status post release, bilateral ankle contractures, lower extremity edema, obesity, idiopathic lower extremity neuropathy, major depressive disorder, and generalized anxiety disorder.

Step 3: He did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following limitations: "[H]e could not climb ladders, ropes, or scaffolds or have exposure to hazards such as unprotected heights or dangerous machinery. [Plaintiff] could frequently stoop or crouch, as well as occasionally climb ramps or stairs, kneel or crawl. Mentally, [Plaintiff] could adapt to occasional changes at the workplace. He could not perform work requiring a production rate pace, such as a fast assembly line."

He had no past relevant work.

Step 5: Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed.

(Decision, Doc. No. 5 at PageID 37-45.) These findings led the ALJ to conclude that Plaintiff did not meet the definition of disability. (*Id.* at PageID 45.)

**B. State Agency Medical Consultants**

State agency medical consultant Uma Gupta, M.D. completed a Disability Determination Explanation form in January 2023. (AR, Doc. No. 5 at PageID 96-98.) Dr. Gupta opined that Plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk for approximately six hours in an eight-hour workday, and sit for approximately six hours in an eight-hour workday. (*Id.* at PageID 96.) Dr. Gupta opined that Plaintiff could frequently stoop, crouch, and operate foot controls bilaterally, and only occasionally crawl and climb ramps and stairs. (*Id.* at PageID 97.) Dr. Gupta also opined that Plaintiff could never climb ladders, ropes, or

scaffolds and needed to avoid all exposure to hazards (defined as unprotected heights, commercial driving, and operating machinery). (*Id.*)

Mehr Siddiqui, M.D. reviewed the updated record and completed a Disability Determination form at the reconsideration level in September 2023. (AR, Doc. No. 5 at PageID 108-09.) Dr. Siddiqui concurred with and adopted the limitations identified by Dr. Gupta. (*Id.*)

The ALJ found the consultants' findings to be "not persuasive" because they were "inconsistent with the medical evidence of record, which supports greater physical limitations." (Decision, Doc. No. 5 at PageID 42.) The ALJ reasoned that the consultants were "unable to consider [Plaintiff's] subjective complaints." (*Id.* at PageID 42-43.) The ALJ further explained: "Although his allegations are not consistent with the medical evidence of record, [Plaintiff's] lower extremity problems and obesity would reasonably result in a less than sedentary residual functional capacity." (*Id.* at PageID 43.)

**C. State Agency Psychological Consultants**

State agency psychological consultant Rena Pompa completed a Disability Determination Form in September 2023. [4] (AR, Doc. No. 5 at PageID 94-96, 98-99.) Dr. Pompa found moderate impairment in the "B criteria" areas of concentrating, persisting, or maintaining pace and adapting or managing oneself. (*Id.* at PageID 94.) She found

---

[4] Although there are no credentials after Rena Pompa's name, she listed a Medical Specialty Code of 38, which indicates a specialty in psychology. (AR, Doc. No. 5 at PageID 95, 99; *see also* DI 28084.050 Signatures, Dates, Specialty Name and Specialty (Items 25 to 28 and Items 30 to 33), SSA POMS DI 28084.050 (effective Oct. 27, 2015) (last updated Dec. 7, 2018).)

mild impairment in the areas of understanding, remembering, or applying information and interacting with others. (*Id.*)

In the mental RFC area of sustained concentration and persistence, Dr. Pompa indicated moderate limitation in the following abilities: carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (AR, Doc. No. 5 at PageID 98.) Dr. Pompa also indicated that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting. (*Id.* at PageID 99.) Dr. Pompa indicated that Plaintiff did not have any work-related limitations in the areas of understanding, memory and social interaction. (*Id.* at PageID 98-99.) Dr. Pompa identified the following work-related restrictions: "Plaintiff is able to persist at tasks that can be learned in up to three months on the job. Plaintiff can adaptively interact with others and adequately adapt/manage himself with occasional workplace changes but no fast-paced production quotas." (AR, Doc. No. 5 at PageID 99.)

Cindy Matyi, Ph.D. reviewed the updated record and completed a Disability Determination Form in September 2023. (AR, Doc. No. 5 at PageID 105-07, 109-11.) Dr. Matyi affirmed Dr. Pompa's assessment. (*Id.*)

The ALJ did not specifically state the persuasiveness of the state agency psychological consultants' findings. (Decision, Doc. No. 5 at PageID 43.) The ALJ reasoned that the consultants' findings were "consistent with [Plaintiff's] longitudinal

mental health record, showing conservative overall treatment." (*Id.* at PageID 43.) However, the ALJ explained that he "used different language, compliant with the Regulations, in limiting [Plaintiff] mentally, due to his moderate limitation in the latter two 'paragraph b' domains, as discussed above." (*Id.*)

**D. Yadwinder Singh, M.D.**

Primary care physician Yadwinder Singh, M.D. authored a letter in June 2023. (AR, Doc. No. 5 at PageID 517.) Dr. Singh noted that Plaintiff had a "history of severe bilateral feet pain[,] primary diabetic neuropathy, plantar fasciitis, contracture of the ankle right side, contracture of the left ankle, pain in the right foot[,] pain in the left foot, [and] severe neuropathic pain affecting his quality of life." (*Id.*) Dr. Singh further wrote:

> [Plaintiff] cannot stand on feet for long time to do any physical or mental work. According to the patient he currently been sitting to the desk so appears to elevate his feet. Patient has also history obstructive sleep apnea, hypogonadism, prediabetes, obesity, depression, GERD, hyperlipidemia.
>
> Due to multiple complex comorbid issues and especially pain in the feet, he is requesting disability. He is on multiple medications. Also planning to see neurologist at OSU in near future and currently seeing podiatrist at Grove city.

(*Id.* (sic all).)

Dr. Singh also completed a Physical Capacity Evaluation form in February 2024. (AR, Doc. No. 5 at PageID 758-59.) Dr. Singh opined that Plaintiff could occasionally lift and carry up to twenty pounds, frequently lift and carry one to two pounds, walk or stand for less than a total of thirty minutes in an eight-hour workday, and sit for less than a total of two hours in an eight-hour workday. (*Id.* at PageID 758.) He opined that Plaintiff required a job that allowed the flexibility to alternate positions at will between

sitting and standing, needed to be off task for fifty percent of the workday, required a cane to walk, and needed to lie down twice during an eight-hour workday due to foot pain. (*Id.*) Dr. Singh indicated that Plaintiff could never climb ladders or stairs, reach for one-third of the workday, and twist, stoop, bend, or crouch for two-thirds of the workday. (*Id.* at PageID 758-59.) He also indicated that Plaintiff had difficulty balancing on narrow, slippery, or erratically-moving surfaces. (*Id.*) According to Dr. Singh, Plaintiff needed to avoid even moderate exposure to wetness, as well as all exposure to hazards and heights, due to foot and left shoulder pain. (*Id.* at PageID 759.) When asked for how long Plaintiff could perform work with the identified limitations, Dr. Singh wrote: "[Plaintiff is] unable to work." (*Id.*) Dr. Singh also noted that Plaintiff had the limitations for the past six months. (*Id.*)

The ALJ found Dr. Singh's February 2024 opinions to be "unpersuasive" because they were "inconsistent with the medical evidence of record, which support no more limitation that [sic] found in the residual functional capacity in this decision." (Decision, Doc. No. 5 at PageID 43.) The ALJ also explained that "[c]linical findings show far less limitations. (Exhibits 3F-2-15, 17-20, 45, 53). Moreover, even exams with positive findings do not support the extensive limitations found" by Dr. Singh. (*Id.*)

**E. Julianne McConeghey, M.S.W., L.S.W.**

Julianne McConeghey, M.S.W., L.S.W. completed a Mental Residual Functional Capacities form in March 2024. (AR, Doc. No. 5 at PageID 814-18.) Counselor McConeghey checked boxes to indicate that Plaintiff had extreme limitation (defined as "not able to function in this area independently, appropriately, effectively, and on a

sustained basis") or marked limitation (defined as "seriously limited ability to function in this area independently, appropriately, effectively, and on a sustained basis, but not precluded") in almost all areas of work-related functioning identified on the form. (*Id.* at PageID 815-17.) Counselor McConeghey also checked boxes to indicate that despite ongoing treatment Plaintiff experienced the following: minimal capacity to adapt to changes in the environment or changes not already part of daily life; changes or increased demands lead to exacerbation of symptoms or deterioration in functioning; changes or increased demands render [Plaintiff] unable to function outside the home without substantial psychosocial supports; episodes of deterioration that necessitate a significant change in medication or treatment; and episodes of deterioration that require [Plaintiff] to be hospitalized or absent from work. (*Id.* at PageID 817.) Counselor McConeghey checked a box to indicate that Plaintiff would be absent from work due to his mental health for more than four days per month. (*Id.*) She indicated that the identified limitations began in January 2022. (*Id.*)

The ALJ found Counselor McConeghey's opinions to be "not persuasive" because they were "inconsistent with the medical evidence of record, showing far fewer mental limitations." (Decision, Doc. No. 5 at PageID 43.) The ALJ reasoned: "As discussed above, [Plaintiff's] primary problems were physical and not mental, as his treatment was conservative, involving counseling and medications, with little suicidal ideation and no inpatient psychiatric hospitalization. As a result, these opinions are not persuasive, as they are not supported by the overall evidence of record." (*Id.*)

## IV. LAW AND ANALYSIS

### A. Plaintiff's Assignments of Error

Plaintiff asserts two errors: (1) the ALJ erred in his analysis of the opinion evidence, and (2) the ALJ's decision is not based on substantial evidence, "particularly as it relates to the symptoms of the Plaintiff's severe foot impairments and the required treatment." (SE, Doc. No. 8 at PageID 889, 892.) For the reasons discussed below, Plaintiff's assertions are not well-taken and the undersigned recommends that the ALJ's decision be affirmed.

### A. The ALJ Did Not Reversibly Err When Analyzing The Medical Opinion Evidence.

#### 1. Applicable law

ALJs are required to analyze the persuasiveness of "all of the medical opinions" in the record. 20 C.F.R. § 404.1520c. A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ...." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following

factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has provided sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore compares the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023) (emphasis added).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[5] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (quoting 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (internal quotations and citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*. For example, an ALJ is not required "to use the terms 'consistency' or 'supportability' to fulfill her obligation to consider those factors." *Vieira v. Bisignano*, No. 1:25-cv-12943, 2026 U.S. Dist. LEXIS 161155, *17 (D. Mass. July 21, 2026).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (internal quotations and citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v.*

---

[5] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

*Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (ALJs must "provide a coherent explanation of [their] reasoning ... in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (remanding case where "the ALJ's decision is internally inconsistent and incomplete").

**2. The ALJ did not reversibly err in his analysis of the state agency medical consultants' findings.**

Plaintiff argues that the ALJ improperly evaluated the administrative findings of the state agency medical consultants. The ALJ explained his analysis of these medical consultants' opinions as follows:

> The State agency (DDS) consultants found that the claimant could perform less than light work. (Exhibits 2A, 4A). These opinions are not persuasive, as they are inconsistent with the medical evidence of record, which supports greater physical limitations. DDS was unable to consider the claimant's subjective complaints. Although his allegations are not consistent with the medical evidence of record, the claimant's lower extremity problems and obesity would reasonably result in a less than sedentary residual functional capacity.

(Decision, Doc. No. 5 at PageID 42-43.) In sum, the ALJ found the medical consultants' opinions to be unpersuasive because: (1) they were "inconsistent with the medical evidence of record, which supports greater physical limitations," and (2) the consultants were "unable to consider [Plaintiff's] subjective complaints," which "would reasonably

result in a less than sedentary residual functional capacity."[6] The undersigned concludes that the ALJ's analysis was not erroneous. Moreover, even if the ALJ did err, any such error would be harmless.

i. *The ALJ adequately addressed the supportability factor in his analysis of the state agency medical consultants' findings, and even if he did not, any such error is harmless.*

Plaintiff contends that the ALJ "collapse[d] the consistency and supportability factors into one analysis" and failed to "meaningfully discuss the supportability factor, namely what the prior administration's findings were based upon." (SE, Doc. No. 8 at PageID 890.) These arguments are not well-taken.

The ALJ explained that he found the medical consultants' opinions to be unpersuasive because they were inconsistent with the medical evidence—which supported greater limitations—and because the consultants did not consider Plaintiff's hearing testimony. This explanation, while not lengthy, is sufficient to "show [the ALJ's] work" and "build an accurate and logical bridge between the evidence and the result." *Scott K.*, 2022 WL 4484603, at *4; *Fleischer*, 774 F. Supp. 2d at 877.

Plaintiff's arguments to the contrary are not well-taken. Although Plaintiff argues that the ALJ should have separately addressed the supportability and consistency factors, "there is no requirement that those factors be evaluated separately." *Vieira*, 2026 U.S. Dist. LEXIS 161155, *17. Nor was the ALJ required to recite and analyze those portions

[6] The undersigned notes that the consultants were able to consider Plaintiff's subjective complaints to the extent that they were contained in the disability reports and in the medical records. (*See* AR, Doc. No. 5 at PageID 91-95, 103-07.) Therefore, the ALJ presumably meant that the consultants were unable to consider Plaintiff's testimony about his subjective complaints during the hearing.

of the record that show precisely what evidence the consultants relied upon to form their opinions.[7] Instead, because the ALJ's explanation is sufficient for this Court "to trace the path of his reasoning," the ALJ adequately complied with the applicable regulation. *See* Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017).

Moreover, even if the ALJ did make such an error, it would be harmless because the ALJ adopted ***greater*** limitations (i.e., a reduced range of sedentary work rather than a reduced range of light work) than those proposed by the medical consultants. "[A]n ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can … be excused as harmless error if: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met." *Wilson C. v. Comm'r of Soc. Sec.*, No. 3:20-cv-457, 2022 WL 4244215, at *6-7 (S.D. Ohio Sept. 15, 2022) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004)); *see also Sheila N. v. Comm'r of Soc. Sec.*, No. 3:25-cv-290, 2026 U.S. Dist. LEXIS 151828, at *12-16 (S.D. Ohio July 9, 2026) (collecting cases). Here, the ALJ "made findings consistent with the opinion" when he adopted restrictions that were

[7] This task would not have been simple. The medical consultants identified the medical records they reviewed in the "Evidence Reviewed" section of the Disability Determination Explanation form. (AR, Doc. No. 5 at PageID 92, 104.) The consultants listed the relevant findings from these records in the "Findings of Fact and Analysis of Evidence" section. (*Id.* at PageID 92-93, 105.) The consultants provided explanations, with citations to Plaintiff's subjective complaints and to the objective evidence, to support their conclusions that Plaintiff's symptoms were "partially consistent" with the evidence in the file. (*Id.* at PageID 95, 106-07.) Finally, the consultants provided explanations for several of the physical limitations assessed in the physical RFC section of the form. (*Id.* at PageID 96-98, 108-09.)

more severe than those opined to by the medical consultants. Therefore, any error in the ALJ's analysis of the supportability factor would be harmless.

*ii. The ALJ did not err by failing to explain his omission of the foot control limitations identified by the state agency medical consultants from the RFC, and even if he did, any such error would be harmless.*

Plaintiff also argues that the ALJ erred by failing to explain why he did not include the consultants' limitation for frequent bilateral foot controls in the RFC. (SE, Doc. No. 8 at PageID 890.) In response, Defendant argues that including the foot controls limitation would not have changed the ultimate outcome of the ALJ's decision, so any error is harmless. (Mem. In Opp., Doc. No. 10 at PageID 908.) The undersigned agrees.

As discussed above, the ALJ rejected the medical consultants' opinion that Plaintiff was limited to a reduced range of light work (*see* AR, Doc. No. 5 at PageID 96-98, 108-09) and imposed a ***more restrictive*** RFC for a reduced range of sedentary work. This choice readily explains why the ALJ omitted the consultants' limitation of frequent foot controls from the RFC—namely, because "the definition of sedentary work does not require operation of foot controls." *Hayes v. Sec'y of Health & Hum. Servs*., 945 F.2d 404 (table), 1991 WL 193455 at *3 (6th Cir. Sept. 30, 1991) (unpublished) (citing 20 C.F.R. § 404.1567(a), (b)); *see also Ortiz v. Comm'r of Soc. Sec. Admin.*, No. 1:14CV2845, 2015 WL 6742082, at *7 (N.D. Ohio Nov. 2, 2015) (collecting cases).

Moreover, the sedentary jobs that the Vocational Expert identified—and that the ALJ relied on at Step 5—do not require the use of foot controls. The Vocational Expert testified that an individual with Plaintiff's vocational profile (i.e., the same age,

education, and work history) and the RFC formulated by the ALJ could perform three sedentary and unskilled jobs: Document Preparer, Surveillance System Monitor, and Telephone Quotation Clerk. (AR, Doc. No. 5 at PageID 86.) The Dictionary of Occupational Titles (DOT) descriptions of these jobs do not indicate that they require the operation of foot controls. *See* DICOT 249.587-018 DOCUMENT PREPARER, MICROFILMING, 1991 WL 672349 (4th ed., Rev. 1991); DICOT 379.367-010 SURVEILLANCE-SYSTEM MONITOR, 1991 WL 673244 (4th ed., Rev. 1991); DICOT 237.367-046 TELEPHONE QUOTATION CLERK, 1991 WL 672194 (4th ed., Rev. 1991). Thus, even if the ALJ had included the consultants' limitation for no more than frequent operation of foot controls in the RFC, Plaintiff still would have been able to perform these jobs as they are generally performed in the national economy.

Accordingly, even if the ALJ erred because he failed to explain why he rejected the consultants' suggested limitation for frequent foot controls bilaterally, any such error would be harmless.

**3. The ALJ did not reversibly err in his analysis of the state agency psychological consultants' findings.**

Plaintiff raises similar arguments with respect to the state agency psychological consultants' prior administrative medical findings. Specifically, Plaintiff argues that the ALJ erred by failing to "meaningfully discuss the supportability factor and omitting discussion of what the prior administration's findings were based upon." (SE, Do. No. 8 at PageID 891.) Plaintiff also argues that the RFC "does not incorporate a limitation to

simple tasks, despite the State Agency Consultant's opined limitations to tasks that can be learned in up to three months on the job." (*Id.*) These arguments are not well-taken.

*i. The ALJ adequately addressed the consistency and supportability factors of the state agency psychological consultants' findings.*

The ALJ explained his analysis of the psychological consultant opinions as follows:

> The DDS psychological consultants found generally mild-to-moderate mental limitations, which is consistent with the claimant's longitudinal mental health record, showing conservative overall treatment. However, I used different language, complaint with the [Social Security] Regulations, in limiting the claimant mentally, due to his moderate limitation in the latter two "paragraph b" domains, as discussed above.

(Decision, Doc. No. 5 at PageID 43.) Thus, the ALJ explained that he ***agreed*** with these consultants' opinions that Plaintiff had "generally mild-to-moderate limitations" because those opinions were "consistent with the … longitudinal mental health record, showing conservative overall treatment." *Id.* Again, this explanation is not lengthy, but it does "show [the ALJ's] work" and "build an accurate and logical bridge between the evidence and the result." *Scott K.*, 2022 WL 4484603, at *4; *Fleischer*, 774 F. Supp. 2d at 877. The ALJ therefore adequately addressed the supportability factor. And as noted earlier, the ALJ was not required to recite and analyze those portions of the record that show precisely what evidence these consultants relied upon to form their opinions.[8]

[8] Again, this task would not have been simple. The psychological consultants identified the medical records they reviewed in the "Evidence Reviewed" section of the Disability Determination Explanation form, then listed the relevant findings from these records in the "Findings of Fact and Analysis of Evidence" section. (AR, Doc. No. 5 at PageID 92-93, 104-05.) They provided explanations, with citations

*ii. Even if the ALJ erred by discounting a mental limitation identified by the state agency psychological consultants, any such error would be harmless.*

Plaintiff also contends that the ALJ erred by failing to incorporate a limitation into the RFC to account for the psychological consultants' identified limitation for tasks that can be learned in up to three months on the job, without explaining the reason for the omission. (SE, Doc. No. 8 at PageID 891.) Defendant argues that including such a limitation would not have changed the outcome of the ALJ's decision. (Mem. In Opp., Doc. No. 10 at PageID 910.) The undersigned agrees with Defendant and finds that even if the ALJ erred in this respect, any such error would be harmless.

Defendant correctly points out that the sedentary jobs that the Vocational Expert identified—and that the ALJ relied on at Step Five—only require a specific vocational preparation (SVP) level of two, which is categorized as unskilled work. *See* DICOT 249.587-018 DOCUMENT PREPARER, MICROFILMING, 1991 WL 672349 (4th ed., rev. 1991); DICOT 379.367-010 SURVEILLANCE-SYSTEM MONITOR, 1991 WL 673244 (4th ed., rev. 1991); DICOT 237.367-046 TELEPHONE QUOTATION CLERK, 1991 WL 672194 (4th ed., rev. 1991). The DOT defines SVP as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT *Appendix C – Components of the Definition Trailer*, 1991 WL 688702 (4th ed., rev.

---

to Plaintiff's subjective complaints and to the objective evidence, to support their conclusions that Plaintiff's symptoms were "partially consistent" with the evidence in the file. (*Id.* at PageID 95-96, 106-07.) Finally, they highlighted relevant evidence and provided explanations for several of the mental limitations that they assessed in the mental RFC section of the form. (*Id.* at PageID 98-99, 109-10.)

1991). According to the DOT, an SVP level of 2 requires "[a]nything beyond short demonstration up to and including 1 month." *Id.*

In other words, the unskilled jobs that the ALJ identified at Step Five require no more than one month to learn the job duties. By contrast, the psychological consultants opined that Plaintiff "is able to persist at tasks that can be learned in up to three months on the job," which refers to semi-skilled work. Therefore, even if the ALJ had limited Plaintiff to semi-skilled work (i.e., job duties that can be learned in up to three months), Plaintiff still would have been able to perform the unskilled identified jobs as they are generally performed in the national economy. Thus, even if the ALJ erred by failing to include this identified limitation, any such error would be harmless.

**4. The ALJ did not reversibly err in evaluating the opinions of primary care physician Dr. Singh.**

Plaintiff acknowledges that the ALJ addressed the consistency factor when he evaluated Dr. Singh's February 2024 opinions but contends that the ALJ "fail[ed] to engage with the supportability factor." (SE, Doc. No. 8 at PageID 891-92.) Plaintiff further argues that the ALJ failed to address Dr. Singh's June 2023 letter. (*Id.* at PageID 892.) These arguments are not well-taken.

The ALJ provided the following analysis of the persuasiveness of Dr. Singh's February 2024 opinions:

> The physical residual functional capacity assessment in Exhibit 16F opined that [Plaintiff] had extreme limitations, restricting him to frequently lifting/ carrying only 1-2 pounds, walking and/or sitting less than 30 minutes in an 8-hour workday, and sitting for less than 2 hours. Overhead reaching limitations and reaching to the front were also indicated, which are all unpersuasive, as they are inconsistent with the medical evidence of record,

> which support no more limitation tha[n] found in the [RFC] in this decision. Clinical findings show far less limitations. (Exhibits 3F-2-15, 17-20, 45, 53). Moreover, even exams with positive findings do not support the extensive limitations found in Exhibit 16F.
>
> The claimant was also deemed completely unable to work. (Exhibits 15F-10, 16F). These findings are not persuasive, as this issue is reversed to the Commissioner.

(Decision, Doc. No. 5, PageID 43 (cleaned up).)

This explanation adequately addresses the supportability factor, which requires consideration of "the objective medical evidence and supporting explanations presented by a medical source …." 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ explained that the limitations identified by Dr. Singh were "all unpersuasive, as they are inconsistent with the medical evidence of record, which support no more limitation than found in the [RFC] in this decision." (Decision, Doc. No. 5 at PageID 43.) The ALJ further explained: "Clinical findings show far less limitations. (Exhibits 3F-2-15, 17-20, 45, 53). Moreover, even exams with positive findings do not support the extensive limitations found in Exhibit 16F." (*Id.*) Significantly, the clinical findings and examinations cited by the ALJ include progress notes from Dr. Singh as well as from urologist Stephen Johnson, M.D. (*See* AR, Doc. No. 5 at PageID 372-380, 382-85, 410, 418.) Because the ALJ compared Dr. Singh's opinions to his own progress notes, he addressed the supportability factor.

Plaintiff argues that the ALJ did not address Dr. Singh's June 2023 letter in accordance with 20 C.F.R. § 404.1520(c), which requires the ALJ to explain his consideration of the supportability and consistency factors for all medical opinions. (SE, Doc. No. 8 at PageID 892.) This argument fails because Dr. Singh did not state any

medical opinions in his June 2023 letter. Instead, Dr. Singh described Plaintiff's "history of severe bilateral feet pain[,] primary diabetic neuropathy, plantar fasciitis, contracture of the ankle right side, contracture of the left ankle, pain in the right foot[,] pain in the left foot, [and] severe neuropathic pain affecting his quality of life." (AR, Doc. No. 5 at PageID 517.) Dr. Singh further stated:

> [Plaintiff] cannot stand on feet for long time to do any physical or mental work. ***According to the patient*** he currently been sitting to the desk so appears to elevate his feet. Patient has also history obstructive sleep apnea, hypogonadism, prediabetes, obesity, depression, GERD, hyperlipidemia.
>
> Due to multiple complex comorbid issues and especially pain in the feet, he is requesting disability. He is on multiple medications. Also planning to see neurologist at OSU in near future and currently seeing podiatrist at Grove city.

(*Id.* (sic all) (emphasis added).)

The ALJ acknowledged Dr. Singh's June 2023 letter in his medical evidence summary, and explained:

> In June 2023, his provider noted that [Plaintiff] had a history of severe bilateral foot pain, with primary diabetic neuropathy, plantar, fasciitis, contracture of the ankle, right side, contracture of thee [sic] left ankle, pain in the feet, and severe neuropathic pain, reportedly affecting his quality of life. He reported being unable to stand on his feet for a long time to do any physical or mental work. He was assessed with plantar fasciitis with pain and contracted Achilles, edema, neuropathy, and a non-severe Tailor's bunion, which resolved (Exhibit 7F, 8F).

(Decision, Doc. No. 5 at PageID 41 (citing AR, Doc. No. 5 at PageID 517-22).) The undersigned concludes that the ALJ appropriately construed the June 2023 letter as simply describing Plaintiff's diagnoses and his subjective complaints about his lower extremity issues. Because Dr. Singh did not opine about what Plaintiff could do despite

his impairments, none of Dr. Singh's statements constituted a "medical opinion" as defined in 20 C.F.R. § 404.1513.[9] Therefore, the ALJ was not required to evaluate the statements in the June 2023 letter under the rules for evaluating medical opinions.

Moreover, even assuming that Dr. Singh intended his June 2023 statement that Plaintiff "cannot stand on feet for long time to do any physical or mental work" to be a medical opinion rather than a description of Plaintiff's subjective complaints, the ALJ adequately addressed it when he evaluated a similar opinion from Dr. Singh. Specifically, Dr. Singh opined in February 2024 that Plaintiff could stand for less than a total of thirty minutes and sit for less than a total of two hours in an eight-hour workday, required a job that allowed the flexibility to alternate positions at will between sitting and standing, and needed to lie down twice during an eight-hour workday due to foot pain. (AR, Doc. No. 5 at PageID 758-59.) Taken together, these opinions account for Dr. Singh's statement in his June 2023 letter that Plaintiff could not stand on his feet "for [a] long time" to perform any work. [10] (*See* AR, Doc. No. 5 at PageID 517.) This argument therefore fails.

### 5. The ALJ did not err when evaluating Counselor McConeghey's opinion.

The ALJ explained his analysis of Counselor McConeghey's opinion as follows:

> Julianne McConeghey, a licensed social worker, opined that the claimant has extreme mental limitation(s), which would result in absences from work…. These opinions are also not persuasive, as they are inconsistent with the medical evidence of record, showing far fewer mental limitations.

---

[9] The regulations define a "medical opinion" as a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2).

[10] Additionally, the ALJ was permitted to evaluate all of Dr. Singh's opinions in a single analysis under 20 C.F.R. § 404.1520c(b)(1).

> As discussed above, his primary problems were physical and not mental, as his treatment was conservative, involving counseling and medications, with little suicidal ideation and no inpatient psychiatric hospitalization. As a result, these opinions are not persuasive, as they are not supported by the overall evidence of record.

(Decision, Doc. No. 5 at PageID 44.)

Plaintiff argues that the ALJ's analysis of Counselor McConeghey's opinion addresses consistency but "fails to engage with the supportability factor." (SE, Doc. No. 8 at PageID 891-92.) As noted above, however, the ALJ is not required to address the consistency and supportability factors separately. Nor is the ALJ required to provide citations to particular evidence in the record when discussing these factors. The ALJ is simply required to "show his work" and "build an accurate and logical bridge between the evidence and the result." *Scott K.*, 2022 WL 4484603, at *4; *Fleischer*, 774 F. Supp. 2d at 877. The ALJ's explanation for why he found Counselor McConeghey's opinions to be "not persuasive" adequately accomplishes these goals.

**B. The ALJ's RFC Is Supported by Substantial Evidence.**

It is well-established that determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [his] residual functional capacity'"). A claimant's RFC describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4).

The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of his limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5). An ALJ may also rely on the testimony of a vocational expert. 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e). "Substantial evidence may be produced through reliance on the testimony of a VE in response to a 'hypothetical' question, but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Varley v. Sec'y of Health and Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Plaintiff argues that the ALJ erred by failing to include limitations in the RFC that permit the intermittent use of a cane, and leg elevation. (SE, Doc. No. 8 at PageID 892-94.) He argues that a limitation allowing him to elevate his legs for six to twelve inches "intermittently throughout the course of a workday" precludes him from performing any work in significant numbers in the national economy. (*Id.* at PageID 894.)

Plaintiff supports his argument by pointing to his subjective complaints and some medical records. (*Id*. at PageID 892-94.) Plaintiff argues that "the evaluations performed by his podiatry team, related to his lower extremities, consistently documented edema from 12/9/22 forward. (Tr. 439)." (SE, Doc. No. 8 at PageID 893.) Plaintiff further cites his statements in a December 2022 Adult Function Report that he was experiencing 'extreme" foot pain, had difficulty standing or walking for long periods, needed to elevate his feet during the day, and needed to lean on a cane due to worsening foot pain during the day. (*Id.* (citing AR, Doc. No. 5 at PageID 260-67).)

As noted above, this Court is not permitted to weigh the evidence and decide whether the preponderance of the evidence would support a different conclusion. *Biestek*, 139 S. Ct. at 1154. Instead, this Court is limited to determining whether the ALJ's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. Here, the undersigned concludes that the ALJ's findings with respect to the RFC are indeed supported by substantial evidence.

The ALJ acknowledged many of Plaintiff's subjective complaints which included allegations of lower extremity pain and swelling, difficulty with exertional activities such as standing and walking, and difficulty with activities of daily living. (Decision, Doc. No. 5 at PageID 40.) The ALJ cited Plaintiff's testimony that he used a cane for "a good amount of time after surgery towards the end of 2021, mainly using it for balance," and had "canes placed around his house." (*Id.*) The ALJ acknowledged Plaintiff's testimony that he needed to elevate his legs "multiple times per day" because of leg swelling. (*Id.*)

The ALJ also acknowledged that Plaintiff complained of foot pain and exhibited limited range of motion of the ankles in September 2022, and that foot x-rays showed contracted digits and enthesophyte calcaneus bilaterally. (Decision, Doc. No. 5 at PageID 40-41 (citing AR, Doc. No. 5 at PageID 425-26).) The ALJ noted that Plaintiff's podiatrist diagnosed bilateral contractures of the ankles, idiopathic neuropathy, plantar fasciitis, and bilateral foot pain in October 2022. (*Id.* at PageID 41 (citing AR, Doc. No. 5 at PageID 458).) The ALJ also noted that in June 2023—approximately six months after the expiration of Plaintiff's insured status—Plaintiff complained that he was "unable to stand on his feet for a long time to do any physical or mental work," and his provider

diagnosed "plantar fasciitis with pain and contracted Achilles, edema, neuropathy, and a non-severe Tailor's bunion, which resolved." (*Id.* (citing AR, Doc. No. 5 at PageID 520-21).) The ALJ further cited a physical examination from March 2024—well over a year after Plaintiff's date last insured—that showed decreased fullness of the left arch, flexed toes, and symmetric but absent deep tendon reflexes. (*Id.* (citing AR, Doc. No. 5 at PageID 850).)

The ALJ nevertheless concluded that the balance of the objective and other evidence did not support Plaintiff's allegations of symptom severity. (Decision, Doc. No., 5 at PageID 42.) The ALJ explained:

> [Plaintiff] alleged in her [sic] post-hearing brief that [Plaintiff] would need the opportunity to elevate his legs, but that was never established in the medical evidence of record. While there are a few references to lower extremity edema, the majority of the examinations do not refer to that problem. It is also inconsistent with his testimony that he drives around to inspect his properties. His representative also referred to use of a cane, but this is not medically necessary, as the medical evidence of record does not support that finding. His attorney-representative also noted the entry at Exhibit 4F, dated December 29, 2022. However, that record also noted that [Plaintiff] was cleared to stand/walk and lift and carry as well as push and pull as long as he was wearing his orthotics.

(*Id.*) The ALJ further explained that he accounted for this evidence by limiting Plaintiff to the reduced range of sedentary work in the RFC, stating: "Regardless, given his severe physical impairments, particularly his foot/ankle, edema, neuropathy, and obesity, I limited him to less than sedentary work, with the postural and environmental limitations included in the residual functional capacity in this decision." (*Id.*)

Taken together, the evidence cited by the ALJ constitutes substantial evidence — that is, "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (*Biestek*, 139 S. Ct. at 1154) — that supports the ALJ's RFC. Because the ALJ's findings are supported by substantial evidence, they cannot be disturbed by this Court even if substantial evidence in the record would support the opposite conclusion. The ALJ therefore did not err by failing to include additional limitations in the RFC.

## V. CONCLUSION

In sum, the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision. The undersigned therefore recommends that the ALJ's decision be affirmed.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 8) be OVERRULED;
2. The Court AFFIRM the Commissioner's non-disability determination; and
3. The case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

## DEADLINE TO FILE OBJECTIONS

In accordance with Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may file and serve specific written objections to this Report and Recommendation

("R&R") **within fourteen (14) days** after being served with a copy. A party may respond to another party's objections **within fourteen (14) days** after being served with a copy. If necessary, the objecting party must promptly arrange for transcribing the record, or whatever portions of it to which the parties agree or the Magistrate Judge considers sufficient. If proper objections are timely filed, then the District Judge will conduct a de novo review of the challenged portion(s) of the R&R. Failure to file timely objections may forfeit rights on appeal. *See U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).